PETER J. SCHWEITZER (INC.) *v.* UNITED STATES (No. 3046[1])

[1] T. D. 42872.

United States Court of Customs Appeals, June 11, 1928

*Allan R. Brown* for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Fred J. Carter,* special attorney, of counsel), for the United States.

*Lamb & Lerch (John G. Lerch* of counsel), *amici curiae.*

[ Oral argument May 9, 1928, by Mr. Brown, Mr. Carter, and Mr. Lerch ]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

Merchandise, known in the trade and commerce of the United States as "paper-makers' felt," "drier felt," and "woolen drier felt," and imported in the form of "endless belts" for use on a Four-drinier paper-making machine, was assessed for duty by the collector at the port of New York, in protest No. 108214–G, as woven fabrics at 45 cents per pound upon the wool content and 50 per centum ad valorem under paragraph 1109 of the Tariff Act of 1922; and, in protest No. 145363–G, as manufactures of wool at 50 per centum ad valorem under paragraph 1119 of that act.

The importer claims that the merchandise is dutiable as parts of machines at 30 per centum ad valorem under paragraph 372.

The paragraphs involved read as follows:

PAR. 1109. Woven fabrics, weighing more than four ounces per square yard, wholly or in chief value of wool, valued at not more than 60 cents per pound, 24 cents per pound and 40 per centum ad valorem; valued at more than 60 cents

but not more than 80 cents per pound, 37 cents per pound and 50 per centum ad valorem; valued at more than 80 cents but not more than $1.50 per pound, 45 cents per pound upon the wool content thereof and 50 per centum ad valorem; valued at more than $1.50 per pound, 45 cents per pound upon the wool content thereof and 50 per centum ad valorem.

Par. 1119. All manufactures not specially provided for, wholly or in chief value of wool, 50 per centum ad valorem.

Par. 372. Steam engines and steam locomotives, 15 per centum ad valorem; sewing machines, and parts thereof, not specially provided for, valued at not more than $75 each, 15 per centum ad valorem; valued at more than $75 each, 30 per centum ad valorem; cash registers, and parts thereof, 25 per centum ad valorem; printing presses, not specially provided for, lawn mowers, and machine tools and parts of machine tools, 30 per centum ad valorem; embroidery machines, including shuttles for sewing and embroidery machines, lace-making machines, machines for making lace curtains, nets and nettings, 30 per centum ad valorem; knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery or parts thereof, finished or unfinished, not specially provided for, 40 per centum ad valorem; all other textile machinery or parts thereof, finished or unfinished, not specially provided for, 35 per centum ad valorem; cream separators valued at more than $50 each, and other centrifugal machines for the separation of liquids or liquids and solids, not specially provided for, 25 per centum ad valorem; combined adding and typewriting machines, 30 per centum ad valorem; *all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem: Provided,* That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal. (Italics ours.)

It appears from the record that the merchandise is composed of wool. It is first woven in the desired widths and lengths with the ends fringed. Then, according to the witness, Waterbury, who testified for the Government, it is "placed on a table with the two ends abutting; the threads on one side are drawn back with a needle, and the other threads woven in in place of them, after which the felt is put in the fulling mill and thoroughly felted and shrunk." One of the articles is approximately 72 inches in width, 50 feet in length, and weighs about 190 pounds. The other is of the same width, but is longer, and, for that reason, heavier.

They are ordered by importer according to the desired dimensions, and are used on a Fourdrinier paper-making machine in the manufacture of "tissue grade" paper. They do not require any alteration and are attached to the machines by merely putting them "around the rolls."

With reference to their uses and functions, the witness, W. P. Schweitzer, who testified for importer, said:

Q. Tell us how it is used there and for what purpose?—A. It is used for the purpose of drying the wet sheet which is formed on the paper-making machine, as it comes to the cylindrical dryers, which are internally heated with steam. This belt presses the paper against the dryers in order that the wet paper may be dried and finished.

Q. Is it necessary in the operation of the paper machine to use this?—A. Yes, sir.

Q. Will you describe its physical appearance—that is, whether it is in the form of a sheet or belt or what?—A. Well, this belt is about 72 inches wide. It is an endless belt—that is to say, it has no seam. It is put on the driers whole, and it is the usual brown color of the belt. It resembles a belt, perhaps, from the fact that it is endless, but it does not serve the purpose of a belt in any way.

Q. And at what stage of the manufacture does the belt start to perform its function?—A. It starts immediately as the sheet of paper leaves the wet presses.

Q. In other words, the paper has already been formed into a sheet?—A. The paper is formed first on the wet end of the machine before it ever comes to the presses; it serves as a moisture remover.

Q. The sheet is then deposited on this felt?—A. The sheet is then carried to the driers, and the felt holds it to the driers; otherwise it would not stay at all.

Q. Are these replaced parts of articles on the invoice?—A. The felt generally lasts about seven or eight months and then must be replaced.

Q. And that is the object for which you imported these things?—A. Yes, sir.

Q. Is that their only use?—A. That is the only use.

Q. Was there any adjustment or process of manufacture, if any, necessary after you get these before they are ready for use?—A. No; they are ready as they come.

It further appears that the use of "paper-makers' felt" on most Fourdrinier paper-making machines is necessary in the manufacture of "tissue grade" paper. It is not used, however, in the manufacture of heavier grades of paper. It is used in other sizes on "cloth-finishing machines," machines for dyeing and cleaning, and laundry machines. The "belts" may be cut to suitable lengths and used for various purposes. But when used in the form of "endless belts," according to the testimony of the witness, Edmund M. Huyck, who testified for the Government, "it is used in some sort of a machine or other." It is not sold by the manufacturers of paper-making machines nor included in their specifications for such machines, but is purchased by paper manufacturers from woolen textile manufacturers. It also appears from the testimony of the witnesses for the Government that a "complete Fourdrinier machine consists of screens, head box, the wire part, and sometimes four sets of presses, drier parts, calenders, reel, slitter, and winder."

When Fourdrinier machines are designed to be used in the manufacture of lightweight papers—including "tissue grades"—the "drier frames" are usually equipped by the manufacturer of such machines "with carrier frames and guides and stretchers for carrying the felt over the driers * * *."

The "drier felts" in question were ordered for use on a Fourdrinier machine designed and equipped for their use.

The Government introduced evidence for the purpose of establishing that in the trade and commerce of the United States, "paper-makers' felt" was not sold or recognized as "parts of machines" by the manufacturer of paper-making machines.

The court below, in an opinion by McClelland, Justice (Brown, Justice, dissenting), held that the articles in question were not parts of machines and overruled the protests; and, in so doing, among other things, said:

It is clearly manifest from the testimony that this felt plays no part in the actual manufacture of paper, but is used on some paper-making machines to help convey the paper, after it is manufactured into sheet form, to the dryer. The testimony is overwhelming that this felt is not recognized by either manufacturer or dealers in paper-making machines as being a part of any of the various kinds of paper-making machines mentioned in the record. The witnesses testifying who manufacture and sell paper-making machines were united in saying that paper-making machines complete did not include a felt like Exhibit 1.

\*　　\*　　\*　　\*　　\*　　\*　　\*

These felts, represented by Exhibit 1, are no more parts of the paper-making machine than is the power through which such machines are operated.

The court, however, failed to express an opinion as to whether the merchandise was properly dutiable as "woven fabrics" under paragraph 1109, as assessed by the collector in protest No. 108214–G, or as manufactures of wool under paragraph 1119, as assessed by the collector in protest No. 145363–G.

As the articles covered by the first protest are like those covered by the second, no reason occurs to us why they are not properly dutiable under the same paragraph.

It is contended by counsel for appellant that the merchandise is dutiable as parts of machines under paragraph 372. Several cases are cited by counsel, which, it is claimed, support his contention. They will be referred to later in this opinion. It is also contended that if the merchandise is not dutiable as parts of machines, it is dutiable as manufactures of wool under paragraph 1119, rather than as woven fabrics under paragraph 1109.

The Government and amicus curiae contend that "the merchandise was not so manufactured and finished as to be exclusively dedicated to any particular use or for any particular machine. It could be as well used as blankets on silk-cloth finishing machines, wool-cloth finishing machines, cotton-cloth finishing machines, or for conveyors in the tanning industry, as for conveyors on paper-manufacturing machines; and it could also be used as a fabric for cutting up and making into polishing cloths, etc. \* \* \*. A fabric having such varied uses could not be said to be dedicated to a specific use."

It is contended that the merchandise in question retains its separate identity even when attached to paper-making machines, and, as it is used on other machines, it can not be classified as "parts of machines"; that the legislative history shows that the Congress considered articles like these to be in the same class with the manufactures of wool; and that, as the provision for "machines or parts thereof," in paragraph 372, is included within the schedule for "Metals and

manufactures of," it must be presumed that the Congress did not intend that a manufacture of wool should be included therein.

The fact that these articles are not manufactured nor furnished by Fourdrinier machine manufacturers, but are obtained from a separate industry, does not preclude classification of them as "parts of machines." *Decorated Metal Manufacturing Co. (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 140, T. D. 40061, and cases cited therein. Furthermore, we held in the case of *Durbrow & Hearne Manufacturing Co.* v. *United States*, 9 Ct. Cust. Appls. 177, T. D. 38001, that shuttles were parts of sewing machines, notwithstanding the fact that they were chiefly used in the United States as parts of embroidery machines.

The mere fact that the articles in question are known in the trade as "paper-makers' felt," "drier felt," and "woolen drier felt," does not preclude their classification as parts of machines. In considering a similar question in the *Decorated Metal Manufacturing Co. (Inc.)* case, *supra,* we said:

In respect to the effort of the protestant to prove a commercial usage of the terms involved herein, such as would exclude the ribbon spools from classification as parts of typewriters, we think that the board's finding is altogether consistent with the evidence. It is practically conceded that in the trade the articles in question are generally and uniformly called ribbon spools or typewriter ribbon spools, but such a nomenclature does not imply that they are not also known as parts of typewriters. It is not infrequent for separate parts of machines to bear particular names of their own without ceasing to be regarded as parts of the completed machines. In such instances the specific names would of course prevail over the general ones if they appeared in competition in a given tariff provision, but in the absence of a specific enumeration the article would be governed by the next most applicable provision to which it would respond. In the present case, for example, if the tariff act contained a specific enumeration of ribbon spools or typewriter ribbon spools, as well as that for parts of typewriters, the former would of course control. But there is no such enumeration in the act, consequently the present competition is between the provision for typewriter parts and that for manufactures of metal not specially provided for, and other like general classifications, and as between these the former is manifestly the more specific.

Furthermore, it should be noted that, in each of the cases heretofore cited, the court was considering whether an article was a part of a particular machine; whereas, the question before us relates to parts of "all other machines * * *, finished or unfinished, not specially provided for."

Of course a fabric which is a mere material, as distinguished from an article "finished or unfinished," and which is adaptable upon further processing to a variety of uses, would probably not be classifiable as a part of a machine. But that is not the problem confronting us. The articles in question have been completely manufactured. They were ordered and delivered according to certain specifications for use on a Fourdrinier paper-making machine, and were used for no

other purpose. They were essential to the proper use of the machine in the manufacture of "tissue grade" paper. Their use was not optional with the paper manufacturer. They were not used as accessories for comfort or convenience in the manufacture of paper, but were used as essential and integral parts, without which the machine could not perform one of its proper and important functions, the only function in which the importer was interested—the manufacture of "tissue grade" paper.

In the case of *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673, this court, in holding that certain halftone screens for use in photographic cameras and in printing frames were dutiable as parts of photographic cameras, said:

An examination of these cases will disclose, we think, that the controlling feature in each of the cases cited was a consideration of the question whether the particular articles imported were, or were not, essential to the operation or use of the particular thing of which they were said to be parts, and, in the absence of which the thing in question was not capable of the use for which it was intended. In each case cited, the article involved was entirely able to function and perform its original purpose without the thing imported.

But when the thing imported is essential to the functioning and use of the article of which it is said to be a part, a much different condition arises.

After referring to the decisions of this court in *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T. D. 34249; *Durbrow & Hearne Manufacturing Co.* v. *United States*, *supra;* and *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434, the court concluded its opinion as follows:

It is shown by the record before us that reproduction cameras are photographic cameras and that the screens in question are essential parts of these cameras and without which they can not function as such. They are, therefore, properly dutiable as parts of photographic cameras under said paragraph 1453.

In the case of *Welte & Sons* v. *United States*, *supra*, this court, in holding that "music rolls" for use on player pianos were parts of "musical instruments," said:

The line between that which constitutes a part of a mechanical device and that which is merely supplementary or accessory to it is sometimes quite narrow and difficult to distinguish, but in this case we think it perfectly clear that although the rolls are not necessary parts of the Welte Mignon considered as an ordinary piano, they are essential constituents of the mechanism which makes it a player piano and are therefore parts of the instrument.

It was there contended by importer that, as the pianos could be used without them, the music rolls were not dutiable as parts of musical instruments. And so, here, it is argued that as "papermakers' felt" is not necessary to the proper functions of the machine in the manufacture of *heavy* paper, it is not an integral part of the machine, notwithstanding the necessity of using it in the manufacture of tissue paper.

In the case of *United States* v. *Bosch Magneto Co.*, *supra*, the court, in considering this subject, said:

We think lamps and horns are essential and necessary parts of automobiles and that automobiles can not be efficiently, safely, or properly operated without them. Even if we were to adopt the test made in certain cited cases where, if the use is optional, it is not "a part," we would not regard our views in this case as in conflict with decided cases, since it is a matter of common knolwedge that the use of lamps and horns is not optional if the operator of the machine operates it in a safe, efficient, and proper manner. The machine could be operated without mud guards, without tires, and without a wind shield, and yet it is obvious that they are necessary and generally required if the machine is to be operated in its usual manner. To operate an automobile without lights would certainly limit it to day operations, and the use of a horn or some other sounding device is usually so essential to the safety of the operator of the car and to the public in general as to make its use almost indispensable.

So it may be said that whether an article is an accessory or an integral part of a machine depends, to a considerable extent, upon its use. If its use is casual, auxiliary, or optional, it is an accessory. If, however, it is used as an essential part, and if the machine is incapable of performing its ordinary and proper functions without it, it will be considered, at least for tariff purposes, as an integral part of the machine.

The Fourdrinier machine is incapable of performing one of its important, ordinary, and proper functions—the manufacture of "tissue grade" paper—without the aid of the articles in question. These articles, when attached to the machine, become as much a part thereof, as the drier frames, carrier frames, guides, and other parts. They will not perform their proper functions as "paper-makers' felts" until they are attached to the machine, nor will the machine function as a complete machine without the "paper-makers' felts." Each is dependent upon the other, and neither will perform its proper function unless used together.

The Government and amicus curiae contend, however, that because endless belts of similar material and construction, although of different sizes, are used on other machines, their chief use being on cloth-finishing machines, the imported articles can not be considered as parts of paper-making machines. We might consider this matter at greater length were it not for the fact that the provision for parts of machines is not limited to parts of paper-making machines but includes parts of "all other machines * * *, finished or unfinished, not specially provided for." The articles in question are used exclusively on a paper-making machine. But, even if they and others of different sizes were used as integral parts of other machines, not specially provided for elsewhere, that fact would not exclude them from the provision in question. We will conclude this phase of the discussion by again calling attention to the decision in the case of *Durbrow & Hearne Manufacturing Co.*, *supra*, which, in our opinion, decides this particular issue adversely to the claims of the Government.

It is true that the provision for parts of machines is included within the schedule for "Metals and manufactures of," but it does not necessarily follow that only such articles as are composed in chief value of metal were intended to be covered by the many paragraphs in that schedule. Of course, in cases of doubt, the title may be considered, along with other rules of statutory construction, for the purpose of ascertaining the legislative intent. It is a matter of common knowledge that there are integral parts of machines composed of material other than metal. The provisions of paragraph 372 are unlimited as to material. It will be observed that other paragraphs in the same schedule are expressly limited to articles composed in chief value of or in part of metal. See pars. 373, 363, 359, 349, and 347. Obviously, if the Congress intended to provide in this schedule for such articles only as were composed in chief value of or in part of metal, it would not have been considered necessary to have expressly so limited some of the paragraphs.

We conclude that the articles in question are properly dutiable as parts of machines.

The judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.