(C. D. 1330)

GEORGE SCHERR CO., INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided May 29, 1951)

*John D. Rode* for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Richard H. Welsh* and *Arthur R. Martoccia*, special attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; RAO, J., dissenting

LAWRENCE, Judge: The merchandise in controversy is designated on the commercial invoice as 60 "Speed Indicators Jaquet" and "60 Sets of accessory tips for above." The collector of customs regarded the speed indicators and accessory tips as entireties and classified them accordingly as instruments intended or suitable for measuring speed within the scope of paragraph 368 (a) (1) (2) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 368 (a) (1) (2)) and assessed duty thereon at the rate of $4.50 each plus 65 per centum ad valorem. A copper tax of 3 cents per pound, as provided in section 3425 of the Internal Revenue Act (26 U. S. C. § 3425), was also imposed. However, the imposition of this tax is not controverted.

It is plaintiff's contention that the speed indicators and accessory tips are not entireties and consequently are separately dutiable, the speed indicators, valued at more than $5 but not more than $10 each, being dutiable at $3 each plus 65 per centum ad valorem in said paragraph 368 (a) (1) (2), and the accessory tips dutiable at 45 per centum ad valorem as articles or wares not specially provided for, composed of metal, as provided for in paragraph 397 of said act (19 U. S. C. § 1001, par. 397), or at 65 per centum ad valorem in paragraph 368 (c) (6) of said act (19 U. S. C. § 1001, par. 368 (c) (6)) as "all other parts."

At the hearing, plaintiff introduced the testimony of Mr. Fritz Koenig, secretary of the plaintiff corporation, with which he has been associated for more than 20 years. He stated that it was engaged in the

"measuring instrument business"; that he was familiar with the merchandise referred to as "Speed Indicators Jaquet" and "Sets of accessory tips for above"; that the speed indicator is an instrument for measuring the speed of shafts and other rotating mechanisms. A leaflet describing the importation was received in evidence as illustrative exhibit 1, and a sample of the speed indicator itself was received in evidence as exhibit 2.

Mr. Koenig further testified that "Exhibit 2 is used for measuring any rotating speed, as for instance electric motors. The tip in the instrument, as in the exhibit, is usually placed against a female center at the end of the rotating shaft. Then by pressing a button, we engage a stop watch which runs for six seconds, or sometimes three seconds, and we get the reading on the dial directly in revolutions per minute." The witness explained that exhibit 2 was a complete instrument without the accessory tip and that it would perform its function and was used mostly without the accessory tip. He testified that—

The accessory tips consist of two rubber-faced tips which can be slipped over the regular steel tip which is part of the instrument. They are used in emergency cases where either there is no female center in the shaft which you want to test, or where the shaft should end in a male center. For that one, one of the tips is a female tip that can be slipped over the male center, but the application of these rubber-lined tips is for emergency purposes only, and very, very rarely—I would estimate probably they are only used in 20 per cent of all applications. There is one other accessory, which is a rotating disc, which can be slipped over the regular point of the instrument. The shaft itself is not accessible, and where it is advisable to take the speed by rotating the disc on the instrument with the face pulley——

It appears further from the record that speed indicators, represented by exhibit 2, are sold with the accessory tips as entireties, although Mr. Koenig stated that "We receive orders for separate accessory tips as *replacement* parts, but usually we sell the instrument complete with the accessories, which by the way also includes the case." [Italics supplied.] The accessory tips are indicated on the circular, illustrative exhibit 1, page Ⓧ, marked with the letter "A." A rubber accessory tip is indicated on illustrative exhibit 1, page Ⓨ, in the illustration at the lower left-hand corner of the page, and is marked "AT."

On cross-examination, it was made to appear clearly that the importation in controversy consists of 60 speed indicators, together with 60 sets of accessory tips, there being 3 accessory tips in each set, and that the 60 sets of accessory tips and an equal number of speed indicators were placed in individual cases, as indicated on page Ⓧ of illustrative exhibit 1, for sale to the trade.

The Government introduced the testimony of Arthur Voelker, treasurer, general manager, and sales manager of the Herman H. Sticht Co., Inc., which is engaged in selling precision instruments, electrical instruments, "and instruments of the same type as under

discussion here." He stated that his concern imports speed indicators for sale in the United States; that he is familiar with their use based on actual experience; that during a period of 12 years he had imported thousands of speed indicators; that he orders the speed indicators with sets of accessories and carrying cases, which are sold in that form; and that accessory tips are occasionally sold separately to replace worn-out accessory tips. Mr. Voelker also testified that a speed indicator could be used without any tip at all; "It is a complete unit for measuring speeds on certain types of motors which have a centered shaft." He made it clear, however, that in certain types of shafts it would be impossible to measure the rotating speed without the use of a tip.

It is to be noted that, according to the testimony of witness Koenig, 80 per centum of the speed indicators was used without the tip, whereas witness Voelker stated that, in his opinion, the speed indicators were used more with the tip than without it, and they could be used without the tips only on certain types of motors which have a center shaft.

In support of its contention that the importation should not be classified for duty purposes as an entirety, plaintiff asserts that to be so classified the articles must be designed to be, or capable of being, assembled together to make a new article having a new name, character, or use, citing the following cases in support of that proposition: *Coty Processing Co., Inc.* v. *United States*, 23 C. C. P. A. (Customs) 117, T. D. 47768; *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 22 C. C. P. A. (Customs) 281, T. D. 47330; and *United States* v. *E. Leitz, Inc.*, id. 277, T. D. 47329.

In those cases it was held that empty perfume bottles and surface-coated boxes, which were specially designed to be sold together; binoculars and leather cases, which were sold as a unit; and microscopes with cases, likewise bought and sold together, were not entireties for tariff purposes. We fail to see wherein those authorities, either factually or legally, have any direct bearing upon the issue presented in this case.

Plaintiff in its brief refers to the case of *Kwong Yuen & Co.* v. *United States*, 73 Treas. Dec. 297, T. D. 49409, and quotes therefrom as follows:

As a general proposition, therefore, articles are not regarded by the courts as entireties for dutiable purposes when there is no natural affinity in composition, and particularly where one of the articles is complete in all of its parts without regard to the article imported to be used with it.

Defendant cites the same case as authority for the statement that:

The courts have announced the principle that articles, imported together, form an entirety for dutiable purposes when in such condition that a joining together thereof creates a complete article of commerce, merging them into a new article having a new name and new use.

Defendant also refers to the case of *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T. D. 41232, wherein the court reviewed various cases upon the subject of entireties, and concluded that:

* * * if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

The doctrine as announced in the foregoing cases, while varying in certain aspects, had its appropriate application to the circumstances in each of the cases in which it was applied. None of the cases to which reference has been made fits the particular facts governing us here.

A case which was not cited in the briefs filed herein, but which we think has an important bearing upon the proper determination of this controversy, is *Norma Company of America* v. *United States*, 6 Ct. Cust. Appls. 89, T. D. 35338, wherein the court was concerned with the interpretation of the provision for "machine tools" as it appeared in paragraph 197 of the Tariff Act of August 5, 1909. It appears from the opinion of the court in that case that the merchandise consisted of various machines, together with certain alternate parts which were necessary for the proper performance of the several functions of the machine. In a well-reasoned opinion, the court posed the question:

* * * what are the constituent parts of the *machine tools* in this case. [Italics supplied.]

which it answered as follows:

We think, speaking generally, the true interpretation of the paragraph is that *any detachable or adjustable parts* of a machine tool *which are indispensable to enable it to perform the manifold operations for which it is designed, if imported therewith,* not including reserve, duplicate, extra, or spare parts or purely hand tools or appliances, and not including belts designed to connect the tool with the motive power, *are properly parts of a machine tool.* [Italics supplied.]

The court further clarified its position as quoted below:

* * * To illustrate, one importing a machine tool designed to drill metal with drills of varying sizes would be entitled to import therewith as a constituent part thereof one set of the detachable, adjustable parts necessary and required to enable it to drill all the different sized holes for which it was designed, because otherwise it could perform only a part of its functions, while its availability, desirability, and practical use and value might depend upon its ability to drill holes of different sizes.

At this point, it is important to consider briefly the background of the *Norma* case, *supra.* In its opinion therein, the appellate court stated that certain "metal-working machines" were imported and that the Board of General Appraisers (now the United States

Customs Court) found that "these machines" were dutiable as machine tools as claimed by the importer. It then quotes from the opinion of the board as follows:

> *This decision only affects the machines proper.* All extra parts thereof, tools, etc., are additional and are therefore properly dutiable as assessed as manufactures of metal, * * *. [Italics added.]

As above indicated, however, the appellate court was of the opinion that not only the machines proper but one set of detachable, adjustable parts for each machine, necessary and required to enable them to drill all the different sized holes for which they were designed, constituted indispensable parts of the imported machines which, as entireties, were dutiable as machine tools.

The appellate court in its opinion referred to the decision of the board in the case of *Oelrichs & Co. et al.* v. *United States*, 26 Treas. Dec. 716, T. D. 34424, wherein the board stated that—

> Duty was levied upon the power-driven machines proper, *exclusive of their adjustable attachments*, * * * as machine tools, and upon the remainder of the merchandise * * * as manufactures of metal not specially provided for. [Italics supplied.]

Further, it was observed in that case—

> It will not be denied—for the simple reason that the importers' own witness clearly concedes it to be the fact—that this power-driven shearing, cutting, and punching machine, in the precise condition in which it is imported, and without the aid of any of the numerous adjustable attachments which it is claimed are absolutely necessary to complete the machine, is fully capable of performing simultaneously at least three separate and distinct operations, viz, that of shearing, cutting, and punching metal. That these three functions constitute but a limited number of the manifold operations of which this particular piece of mechanism is capable of performing with the aid of certain adjustable attachments, in no way alters the fact that the machine proper, as imported, is in every sense of the term a complete machine tool *and that such adjustable attachments are merely extra or additional parts of the machine.* [Italics supplied.]

The appellate court in the *Norma* case, *supra*, quoted from the *Oelrichs* case *supra*, which was relied upon by the Government, and rejected the interpretation of the machine-tool provision adopted by the board in the latter case.

It is worthy of note that subsequent to the decision of the appellate court in the *Norma* case, *supra*, the board in *M. J. Corbett & Co.* v. *United States*, 29 Treas. Dec. 478, Abstract 38738, held that an item described as "barre piqueur," representing an "adjustable attachment" of a net-making machine, and which was "an indispensable part of the machine in performing one of the regular operations for which it is designed for making plain or fancy veilings," was properly classified by the collector of customs as a constituent part of the net-making machine which it accompanied, and came within the scope of paragraph 165 of the Tariff Act of 1913 which provided, among other things, for "machines for making * * * nets."

It is significant that in reaching this conclusion the board expressly followed the *Norma* case, *supra*, and, of course, departed from the views which it had originally held in the *Norma* case (27 Treas. Dec. 93, Abstract 36213) and in the *Oelrichs* case, *supra*.

If the adjustable parts of a net-making machine are properly to be regarded as constituent parts of the machine and indispensable parts of it in performing one of its operations, by analogous reasoning the accessory tips in issue must likewise be considered as constituent parts of the speed indicators with which they were imported.

Guided by the reasoning of the appellate court in the *Norma* case, *supra*, which we followed in the *Corbett* case, *supra*, we are clearly of the opinion that a speed indicator of the type in issue designed to measure the speed of various rotating shafts with the use of a set of three accessory tips, which are adjustable and detachable parts necessary and required to enable an operator to determine the speed of rotating mechanisms having shafts of different shapes, is in contemplation of law an entirety. Without the accessory tips the indicator "could perform only a part of its functions, while its availability, desirability, and practical use" depend upon its ability to measure the rotating speed of shafts under different conditions.

For the foregoing reasons, we hold that the 60 speed indicators, together with the 60 sets of accessory tips herein, were properly classified for duty by the collector of customs, and his decision is affirmed. The protest is overruled in all respects, and judgment will be entered accordingly.

### DISSENTING OPINION

RAO, Judge: In my opinion, the instant speed indicators, and the accessory tips, imported with them, are not entireties and should not have been so regarded for classification purposes.

Generally speaking, the doctrine of entireties is invoked when two articles, imported at the same time, are incomplete within themselves, are designed to be used together, and when so used form a new article of commerce having a new name and a new use. *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T. D. 41232; *Columbia Shipbuilding Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T. D. 39085; *United States* v. *Kronfeld, Saunders, Inc.*, 20 C. C. P. A. (Customs) 57, T. D. 45679; *Kwong Yuen & Co.* v. *United States*, 73 Treas. Dec. 297, T. D. 49409.

While it is true that the factual situation in each of the cited cases differs materially from that here involved, the principle of law enunciated therein has not been restricted to nor limited by the record as made in any of them. In every instance in which the element of incompleteness of one or both of the imported articles exists, and where neither can become a useful salable item of commerce without

the complement of the other, the rule that they are, in contemplation of law, entireties, has been applied.

There is testimony of record, both on the part of the plaintiff and on the part of the defendant, that the speed indicator here involved is a complete instrument without the accessory tips; that its sole and only function is to measure the rotating speeds of motors, and that it can and does perform that function, whether or not an accessory tip is attached. The essential point of difference between the two opposing witnesses with respect to the use of the accessory tips lies in the fact that, in the view of the witness for the plaintiff, the device is mostly used—approximately 80 per centum of the time—without the accessory tips, whereas defendant's witness was of opinion that the speed indicator is more frequently used with the tip, than without.

Nevertheless, both are agreed that the speed indicator performs no different function when either a cone-shaped or a cup-shaped tip is fitted over the steel projection of the indicator, than it does when it is used by itself. The addition of either of these tips merely facilitates the engagement of the spindle of the indicator with the shaft of the motor, the speed of which is being measured. They either create more positive friction or make the indicator available to measure more machines. The functioning of the instrument for the purpose for which it was constructed is not affected by the presence or absence of either of these two tips.

Even when the circular wheel tip is attached to the spindle to measure the peripheral speed of a rotating pulley, in instances where the end of the shaft of the motor can not be reached, the speed indicator is not in reality performing a new function. It is measuring the peripheral speed in order that the rotating speeds may be ascertained. The ultimate result is not obtained until the reading is converted back into revolutions. In other words, the use of the circular wheel tip merely affords an alternative means of producing an identical result. Moreover, although it is not possible to obtain circumference speed, without the use of the circular wheel tip, and to that extent it might be urged that the attachment of this accessory creates a different use for the speed indicator, the evidence fairly establishes that the circular wheel tip is not frequently resorted to. Not only is there testimony on the part of the plaintiff that all the accessory tips are for emergency use only, and are employed in not more than 20 per centum of the applications of the speed indicator, there is also the statement of the defendant's witness, Arthur Voelker, that "I have mostly seen the pointed rubber tip used." As to the pointed rubber tip, defendant's witness then testified "I would say most people prefer to use the rubber tip because it gives them more positive friction with the motor shaft. They would prefer to put a rubber tip over it."

The opinion of the majority holds that the speed indicator and the accessory tips constitute an entirety under the theory that the latter are parts of the former, which cannot perform all of the functions for which it was designed without the use of the latter, citing *Norma Company of America* v. *United States*, 6 Ct. Cust. Appls. 89, T. D. 35338. In my opinion, the cases are distinguishable. The merchandise under consideration in the *Norma* case, *supra*, consisted of a machine tool which was designed to perform a variety of operations. Each of the appliances imported with it, when connected to the body mechanism, enabled the latter to perform one of those various operations. It thus became a different instrument, designed to accomplish a distinctly new result, as each of the various parts was attached. It seems to me that the distinction is highlighted by the following illustration taken from the *Norma* case, *supra*, and quoted in the majority opinion:

* * * To illustrate, one importing a machine tool designed to drill metal with drills of varying sizes would be entitled to import therewith as a constituent part thereof one set of the detachable, adjustable parts necessary and required to enable it to drill all the different sized holes for which it was designed, because otherwise it could perform only a part of its functions, while its availability, desirability, and practical use and value might depend upon its ability to drill holes of different sizes.

It is apparent that while a machine tool for drilling metals performs the single over-all function of making holes in metals, each different drill enables the machine tool to make a hole of a different size. To that extent the use of each new drill accomplishes a new result. In the instant case, however, whether or not an accessory tip is attached to the indicator, the instrument performs an identical function and the only function which it was designed to perform. With or without the accessory tip, the single result obtained by the speed indicator is the recording of the revolutions per minute of the shaft of the motor—the ascertainment of the speed of the machine.

In the case of *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, the court distinguished between a part and an accessory in the following manner:

So it may be said that whether an article is an accessory or an integral part of a machine depends, to a considerable extent, upon its use. If its use is casual, auxiliary, or optional, it is an accessory. If, however, it is used as an essential part, and if the machine is incapable of performing its ordinary and proper functions without it, it will be considered, at least for tariff purposes, as an integral part of the machine.

The case of *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, is frequently cited for its explanation of what constitutes a part of an article for customs purposes. It is there stated:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.* * * *

The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other. * * * [Italics supplied.]

Applying the principle of the *Willoughby* and *Schweitzer* cases, *supra,* to the facts at bar, it seems apparent that the involved accessory tips are not parts of the speed indicator, for the latter completely performs its function without them. They are, what their name implies, accessories rather than parts. Like the tripod for a camera, the stand for a typewriter, or the support for a machine, these accessory tips serve primarily to hold the instrument in place. Although they facilitate its use, they do not share in the actual performance of the particular function for which the speed indicator was designed. Since the speed indicator without the accessory tips is capable of use and is used in measuring the speed of a machine, or the revolutions of its shaft, it follows that the accessory tips are not parts of the speed indicator. Accordingly, I hold that said accessory tips, which are conceded to be in chief value of metal, are properly dutiable at only 45 per centum ad valorem as manufactures of metal, not specially provided for, under paragraph 397 of the Tariff Act of 1930.

Examination of the official papers reveals that all of the instant merchandise was appraised as invoiced and entered. The appraised value of the speed indicators, without including the accessory tips, is manifestly less than $10 each. They are therefore properly dutiable, as claimed in the protest, at $3 each plus 65 per centum ad valorem, pursuant to the provisions of paragraph 368 (a) (1) and (2) of the Tariff Act of 1930.