(C.D. 2174)

MORRIS FRIEDMAN v. UNITED STATES

United States Customs Court, Second Division

(Decided May 3, 1960)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Murray Sklaroff*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: An importation of three types of loudspeakers, represented by exhibits 1, 2, and 3, respectively, was classified by the collector of customs as articles having as an essential feature an electrical element or device, and duty was imposed thereon at the rate of 13¾ per centum ad valorem pursuant to the provisions of paragraph 353 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

Plaintiff claims that the articles should be classified in the same paragraph, as modified, *supra*, as parts of radios and subjected to duty at the rate of 12½ per centum ad valorem.

The pertinent text of paragraph 353, as modified, *supra*, is here set forth:

Classified:

Articles having as an essential feature an electrical element or device * * * finished or unfinished, wholly or in chief value of metal, and not specially provided for:

Batteries _____ * * *

\* \* \* \* \* \* \*

Other _____ 13¾% ad val.

Claimed:

Electrical signaling, radio * * * apparatus, instruments (other than laboratory), and devices finished or unfinished, wholly or in chief value of metal, and not specially provided for (not including television apparatus, instruments, or devices) _ 12½% ad val.

\* \* \* \* \* \* \*

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this part * * *_____ The same rate of duty as the articles of which they are parts

At the trial of this case, the following three exhibits were received in evidence—

Exhibit I—Loudspeaker identified on the consular invoice accompanying the entry herein as "Type U 5," together with its container.

Exhibit 2—Loudspeaker identified on said invoice as "Fehodux 12."

Exhibit 3—Loudspeaker identified as "Type V 4," together with its container.

Louis Von Witte, the only witness in the case, testified for the plaintiff substantially as follows:

He is owner of the Witte Radio & Television Co., the ultimate consignee herein, engaged in the business of "Importing radios, loudspeakers, radio antennas, car radios, and sundry items, and distributing them across the country to distributors and wholesalers, retailers, and so on." For the past 30 years, he had been associated with radios in the capacity of servicing, installing and selling them, and explaining their operation to his customers. His experience and knowledge of radios and their equipment was well established.

Von Witte stated that radio receiving sets require at least one loudspeaker "and can have up to ten or more," depending upon the size of the room in which they are used. When asked if a large radio should have more than one loudspeaker, he replied, "It should have more, but not necessarily." It depends upon the price, the quality, and the size of the cabinet. "You could have a radio in a small cabinet which would employ a medium-size speaker, like Exhibit Num-

ber 'V 4'—I think it was Exhibit Number 3. If it is a large cabinet you would use the Exhibit Number 2, which is a 'FEHODUX 12'—more tone, more volume."

The witness made it clear that radio loudspeakers must have a true tone and a high range; that the three exhibits above referred to all "contain a special cone, which is also a necessary thing to reproduce sound. Your cone is the membrane in there, the part that is so delicate, which vibrates with the electrical impulses supplied to the Speaker by the radio, and with the vibration of the cone, if it is a hard, cheap, inferior material which would be placed into an intercom, for instance, you cannot reach the high range of reproduction necessarily associated with music reproduction." The witness added that the three exhibits before the court have all the characteristics and qualities above described. The loudspeakers are so constructed as to eliminate harsh overtones and vibrations from various causes which might otherwise produce unpleasant sounds.

In the opinion of the witness, the loudspeakers represented by exhibits 1, 2, and 3 were all designed to be used as integral, constituent, and component parts of radios. When asked if the use of exhibits 1, 2, and 3 was casual, auxiliary, or optional in connection with the radios, the witness replied, "You might term it an auxiliary, but I would say it is a necessary part." The only practical commercial use of the subject merchandise is as loudspeakers for radios.

On cross-examination, the witness described a radio, such as is used in the home, as being composed of a metal chassis which will house the tube sockets; resistors "which are small units that are soldered into various places in connection with condensers"; and also transformers, tubes, and "as a rule, for the home, a housing that all this is placed into, and then comes your speaker * * * In the housing." In other words, the radio consists of many objects, including the speaker. The three exhibits above mentioned may be used in other parts of the house through a wire connection. Although the loudspeakers in controversy were not imported with radios, they were brought into the country to be used in conjunction with radios after importation.

Although the witness testified, on cross-examination, that the three exhibits could be used with phonographs, electric guitars, or movie projectors, there is no evidence that they ever were so used. As pointed out earlier, the witness testified on direct that he knew of no other use for the merchandise than in conjunction with radios, and the record clearly indicates that it is so used. It is for the purpose of amplifying or giving a truer tone to the sound emanating from a radio which, in itself, may have a loudspeaker housed within it and which would perform its normal function without the addition of a speaker, such as exhibit 1, 2, or 3.

On redirect examination, the witness was asked in substance if exhibits 1 and 3 could be used as separate accessories. His answer was "I wish to consider the word 'accessory' in this particular case. I would say more as an auxiliary or an addition to the radio, provided the radio has one speaker itself, and if it didn't have one that came with the set itself, or the radio, then you would have to use this as the number one speaker * * *."

According to Von Witte, the present trend is to equip radio receiving sets with more than one loudspeaker in order to improve the volume and the quality of tone.

It is the contention of plaintiff that the testimony of Von Witte establishes that the loudspeakers in controversy fulfill the requirements of what constitutes an article a part of something with which it is used. *United States* v. *Willoughby Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46851. The language relied upon by plaintiff from the *Willoughby* case states—

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article*. [Italics quoted.]

In our opinion, the testimony does not support the conclusion that radio sets could not "function as such article" without the addition of loudspeakers, such as exhibit 1, 2, or 3.

In this connection, our appellate court, in *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, 292, T.D. 42872, observed—

So it may be said that whether an article is an accessory or an integral part of a machine depends, to a considerable extent, upon its use. *If its use is casual, auxiliary, or optional, it is an accessory.* If, however, it is used as an essential part, and *if the machine is incapable of performing its ordinary and proper functions without it*, it will be considered, at least for tariff purposes, as an integral part of the machine. [Emphasis added.]

The *Schweitzer* case, *supra*, was cited with approval in *United States* v. *Janson Co.*, 16 Ct. Cust. Appls. 315, T.D. 43075, and in numerous other later cases, notably, *United States* v. *Herman H. Sticht & Co.*, 22 C.C.P.A. (Customs) 40, T.D. 47048, and *United States* v. *Cody Manufacturing Co., Inc., Rohner Gehrig & Co., Inc.*, 44 C.C.P.A. (Customs) 67, C.A.D. 639.

It will be recalled that Von Witte stated, on two occasions during his examination by counsel, that the loudspeakers in controversy were not accessories but were auxiliaries. This would seem to show a distinction without a difference, which is borne out by reference to the following definitions from Webster's New Collegiate Dictionary (1956)—

auxiliary * * * *adj.* * * * 1. Conferring help or aid; assistant; supporting. 2. Subsidiary; also, additional. 3. Serving to supplement or take the place of;

as an *auxiliary* power station. * * *—Syn. Subsidiary, accessory, subservient, adjuvant. * * *

accessory * * * *adj.* 1. Aiding or contributing in a secondary way; as, *accessory* sounds in music. * * *—Syn. Auxiliary, contributory, subsidiary, adjuvant.

This is followed by the definition of the noun "accessories"—

* * * 1. That which contributes subordinately to an effect; an adjunct or accompaniment. 2. Any article or device that adds to the convenience or effectiveness of something else but is not essential; an appurtenance; attachment. * * *

Due to the confused state of the record herein, the evidence before the court does not establish *prima facie* whether the instant loudspeakers are "parts" of radios within the purview of the *Willoughby* case, *supra,* or are "accessories" for radios within the scope of the *Schweitzer* case, *supra.*

We are, therefore, of the opinion that the plaintiff herein has failed to sustain his twofold burden of proving not only that the classification made by the collector of customs was in error but also by affirmative evidence to establish the correctness of his contention. *Joseph E. Seagram & Sons, Inc.* v. *United States,* 30 C.C.P.A. (Customs) 150, 157, C.A.D. 227, and cases therein cited.

Consideration has been given to the various cases cited by plaintiff in his brief, but we find it unnecessary to discuss them here as to do so would not change our conclusion.

The protest is overruled, and judgment will issue in accordance with the view above expressed.