**No. 58105.**—Engis Equipment Co. and Alltransport, Inc. *v.* United States, protest 165283–K (New York).

OLIVER, Chief Judge: This case concerns a shipment described on the invoice as "1 Alignment Telescope with Mountings, Parts & Accessories," which the collector classified under paragraph 228 (a) of the Tariff Act of 1930, which, so far as pertinent, reads as follows:

\* \* \* optical measuring or optical testing instruments \* \* \* frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, 60 per centum ad valorem.

The protest alleges that "said merchandise is properly dutiable at 25% under Par. 228 (b) and T. D. 51802," which amended paragraph reads as follows:

Telescopes valued at more than $2 each, frames and mountings therefor, and parts of such frames or mountings; all the foregoing, finished or unfinished, not specially provided for, 25% ad val.

*Provided,* That no frames or mountings for the foregoing telescopes or parts of such frames or mountings shall be entitled to a reduction in duty by virtue of this item unless they are imported in the same shipment with such telescopes and are suitable in type and not excessive in quantity for use with the telescopes with which imported.

The case was the subject of our decision in *Engis Equipment Co. and Alltransport, Inc.* v. *United States,* 30 Cust. Ct. 311, Abstract 57012, and it is before us at this time pursuant to our order (Abstract 57062) granting plaintiffs' motion for rehearing.

At the time of the original trial, counsel for plaintiffs stated that "in order to simplify the issues we desire to limit this case to the telescopes themselves and we claim that they are properly dutiable at 25% under Paragraph 228 (b), as modified by Trade Agreement, namely T. D. 51802, as telescopes, finished or unfinished, not specially provided for, valued at more than $2.00 each." Continuing with his opening statement at that time, counsel for plaintiffs stated further (R. 5):

\* \* \* we propose to show what is the use of the telescope itself and what the telescope is, and we do not propose to establish necessarily what is the use of the various parts and accessories because we make no claim in this case as to the parts and accessories. In other words, we don't want to get into the question as to whether they are parts or accessories. We think there may be some doubt as to whether they are integral necessary parts of the telescope and since we would like to present the clear-cut issue to the Court as to whether this is in fact a telescope for tariff purposes we don't want to complicate it by bringing in other things, the accessories, etc.

Plaintiffs thereupon introduced the testimony of one witness, the vice president and secretary of the importing corporation. He testified that the instrument, to which his entire testimony was directed, is exclusively used in the aircraft industry, and that its particular purpose is to permit alignment of a series of fittings essential in the construction of aircraft fixtures. Explaining in detail such exclusive use of the instrument, the witness stated that in the construction

of an airplane's main structural parts, it is necessary that series of points lie on a straight line and, therefore, "manufacturing devices called fixtures must be provided which will insure that these points in each plane will lie in a straight line and on the proper straight line, and in order to set this fixture, this manufacturing device, with its points properly along a straight line one behind the other, the alignment telescope is used. As you sight through this telescope first one point and then the second point behind it you can compare the image of the point as it appears in the telescope with the image of the preceding one and the image in the process and thereby set them until they all appear in line." The telescope, *per se*, performs its function through a system of lenses that magnify the image of the distant point, permitting the observer to align a series of fittings in the construction of an airplane fixture. The witness' description of the operation is substantially as follows: Light emanating from behind the fitting being defined passes through the field lens where it is collected through the focusing lens that is adjusted for the distance of the object from the field lens. The sharp image thus obtained passes through the telescope graticule to a lens system and into the eyepiece, where it is seen, magnified, by the eye. Essential to the operation of the telescope are "a holder on which the instrument rests," and "a distant point, the image of which is shown in the telescope." The "distant point" may be "a target plug; it may be any point on the fixture; it may be an ascribed line."

Based on the limited scope within which the case was presented at the original hearing, we overruled the protest in our previous decision, Abstract 57012, *supra*, because plaintiffs failed to overcome the presumption of correctness attaching to the collector's classification, and, in reaching that conclusion, we stated:

> To sustain plaintiffs' contention as it is now presented before us, and hold the instrument, *per se*, to be classifiable under paragraph 228 (b), as modified, *supra*, without any proof—and the record contains none—from which to determine the tariff status of all of the other items imported in the same shipment, would have the effect of classifying the present importation, an entirety, under two separate categories carrying two different rates of duty. Such a result would create an anomalous situation that could not be reconciled with an intent of Congress.

At the trial on rehearing, plaintiffs maintained the position originally assumed by limiting their claim to the telescope itself. Counsel stated plaintiffs' contention as follows: "And, I will say once again that we make no contention in this case with respect to the other parts, but limit our claim to the dutiable classification of the telescope itself which we contend should be dutiable as telescopes at 25 per cent under Paragraph 228 (b)." While plaintiffs confined their claim to the telescope, *per se*, the evidence adduced on rehearing was limited, as stated by counsel, "to the other things that came with the telescope in an effort to show that they were not necessary or integral parts and that the whole thing was not an entirety."

To support that position, plaintiffs recalled the witness who appeared at the original hearing. He described the several articles that were included in the present importation as follows:

> These units consisted on each importation of one telescope of the following: An oiling ring, which is a ring of metal, lined with felt, which will help to protect the outside of a telescope or accessory against rust There were, furthermore, four target plugs of a size of one and a half inch diameter, each consisting of a steel ring with a glass disc set in the steel ring. There was, furthermore, one collimator unit, which is a target in tubular form steel with two glass discs in them called radicals, a lens and illuminating equipment. There was, furthermore, electrical wiring and an electrical transformer for the collimator and two spare lamps for the collimator illumination. There was, furthermore, an accessory unit for the target plugs called an alignment key and besides, there was a box in which the telescope and its accessories had been housed in shipment.

Referring specifically to each of the different articles comprising the shipment under consideration, the witness further testified that the collimator has built into it a glass disc that is graduated, and that the entire unit permits the observer to determine the angle at which the collimator is positioned toward the telescope, "by seeing scales through the telescope through which the angle of tilt can be read." The target plugs are mounted on the unit to be aligned, and the oiling ring is passed over the barrel of the telescope and its accessories "to keep them oiled and cleaned." The witness further testified that the telescope, *per se*, "can be used" without any of the items of equipment, hereinabove enumerated, and that "any and all of the accessories listed" are "actually used in conjunction with telescopes of other design," and also "in connection with surveying instruments such as transit levels or theodolites." The wooden case or cabinet is arranged to fit the telescope and the other articles included in the present importation.

On cross-examination, the witness testified that the collimator unit and the target plugs are used with the alignment telescope "more often than not." When asked whether, at the time of the present importation, the merchandise was designed or sold to him as an alignment telescope complete with collimator, four target plugs, and a transformer in a fitted cabinet, the witness answered "They have sold it in that manner."

It should be emphasized that the collector's classification of the present merchandise as an entirety carries with it the presumption that the classifying officer found all the necessary facts to exist which brought the goods within the classification adopted by him. *United States* v. *Marshall Field & Co.*, 17 C. C. P. A. (Customs) 1, T. D. 43309. It is also axiomatic that the party who challenges the collector's classification assumes a twofold burden of proving not only that the classification made by the collector is erroneous but he must also show affirmatively that his own claimed classification is correct. *Dorward & Sons Co. Pacific Vegetable Oil Corp.* v. *United States*, 40 C. C. P. A. (Customs) 159, C. A. D. 512; *H. J. Baker & Bro.* v. *United States*, 37 C. C. P. A. (Customs) 52, C. A. D. 419.

Under those well-settled principles of law, plaintiffs herein have failed to make out a *prima facie* case. The merchandise in question is used exclusively in aircraft construction where it is "very important" to have series of fittings aligned accurately. It follows, therefore, that it is most desirable to employ every conceivable device in order to obtain the necessary result, with the attendant degree of accuracy. The shipment under consideration, as an entirety, meets the requirement. Plaintiffs' evidence in connection with the collimator unit and the target plugs tends to support the collector's action, in showing that the said articles, as integral parts of the whole, contribute to the manifold accomplishments in the alignment of aircraft fixtures. The witness' statements that the collimator unit and the target plugs are used with the alignment telescope "more often than not" are indicative of the chief or predominant use, a conclusion that is supported by illustrations (plaintiffs' illustrative exhibits G and H), showing the use of target plugs with the alignment telescope in depicting the principle and the method employed "to determine alignment or establish alignment." It is significant that the alignment of points is described as "with general optical tooling system" (illustrative exhibit H, *supra*), a generic characterization that suggests a combination of several units to complete an entity.

The additional testimony, introduced at the trial on rehearing, is not sufficient to warrant any change from our previous decision, Abstract 57012, *supra*. Accordingly, we adhere to the conclusion reached therein and hold, on the basis of the entire record before us, that plaintiffs have failed to overcome the presumption of correctness attached to the collector's classification of the merchandise under paragraph 228 (a), *supra*.

The protest is overruled and judgment will be rendered accordingly.