(2)   Requisites for sports and games; these include:

Balls for various games (e.g.:—*football*, rugby and similar balls, *including bladders and covers for such balls;* \* \* \*).[3] [Emphasis supplied.]

In view of the clear legislative intent evidenced in this case—that football bladders are to be classified as "parts of football equipment" dutiable at 15 percent—we need not determine the correctness of plaintiff's contentions that item 772.75 is a specific use provision within the meaning of General Interpretative Rule 10(ij), and that as such, it prevails over an *eo nomine* provision for the merchandise in question. For the rule that a use provision takes precedence over an *eo nomine* provision is merely a canon of construction for determining the intent of Congress. But where, as here, the intent of Congress concerning the purpose and scope of a tariff provision is otherwise clearly demonstrated, a canon of construction (or a general interpretative rule) must yield to that specific intent. *W. E. Sellers* v. *The Cronite Co., Inc.*, 45 CCPA 27, C.A.D. 668 (1957); *Mettler Instrument Corp.* v. *United States*, 60 Cust. Ct. 198, C.D. 3317 (1968).

The protest is overruled. Judgment will be entered to that effect.

(C.D. 3634)

VICTORIA DISTRIBUTORS, INC. *v.* UNITED STATES

---

[3] Recent decisions of this court have recognized the importance of the "Brussels Nomenclature" in the arrangement of the revised 1962 tariff schedules. See *e.g., Freni* v. *United States,* 283 F. Supp. 89, 92–93, and cases cited at note 3, C.D. 3375 (1968).

United States Customs Court, Second Division

(Decided December 9, 1968)

*Allerton deC. Tompkins* for the plaintiff.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Charles P. Deem* and *Harold L. Grossman*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The merchandise covered by the protests presently before the court, which have been severed from the protests originally consolidated for trial, consists of horn-light combinations, imported from Hong Kong, and entered at the port of Philadelphia. The merchandise was assessed with duty at 30 per centum ad valorem under paragraph 371 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as parts of bicycles. While various claims were made in the protests, as amended, the one now relied upon is that the merchandise is properly dutiable under paragraph 353 of said tariff act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, or by Presidential Proclamation No. 3468, 97 Treas. Dec. 157, T.D. 55615, and Presidential Proclamation No. 3479, 97 Treas. Dec. 430, T.D. 55649, as electrical signaling devices, at 10½ or 9½ per centum ad valorem, depending upon the respective dates of entry.

The pertinent provisions of said tariff act, as modified, are as follows:

Paragraph 371, as modified by T.D. 51802:

Parts of bicycles, not including tires:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Other _____ 30% ad val.

Paragraph 353, as modified by T.D. 54108:

Electrical signaling, welding, and ignition apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for____ 10½% ad val.

Paragraph 353, as modified by T.D. 55615 and 55649:

Electrical apparatus, instruments (other than laboratory), and devices, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for:
    Signaling, welding, and ignition, and parts thereof _____ 9½% ad val.

It has been stipulated that the articles covered by these protests, identified as Comet 491C-2, Comet chrome plated two-bulb horn-lite, and Comet flat 242-C flat horn-lite, are in chief value of metal.[1]

Plaintiff's collective exhibit 1, received in evidence at the trial, is a representative sample of the item described on the invoices as " 'COMET' Brand Tinplate Bicycle Horn-Light Combinations, Chrome-Plated, with Two bulbs, Model No. 491C-2". It consists of a head lamp with two bulbs, with a wire ending in a push button. The interior contains a place for batteries. Clamps, screws, and nuts are in the box. According to the witness Reyersbach, it is an actual sample of the imported merchandise.

Plaintiff's exhibit 2, also received in evidence at the trial, is a No. 900 horn-lite or horn-light combination of the Oxford International Corp. Dr. Reyersbach stated that it is representative of the Comet tinplate bicycle horn-light combination, flat type, chrome plated, Model 242-C. It is a long flat lamp having one bulb and a wire ending in a push button. The interior has a place for batteries. Brackets and screws are included.

Plaintiff called five witnesses, who had had the following trade experience:

---

[1] These articles are referred to on the containers and in the record as "horn-lites" or "horn-light combinations". "Horn-lite" appears to be a contraction of the descriptive term "horn-light combination".

Dr. Ernst Reyersbach, who has been president and in charge of the general management of Victoria Distributors, Inc., the plaintiff herein, since 1951, testified that the business of that firm is importing bicycles, bicycle parts and accessories. The witness was familiar with the merchandise involved herein and had sold it in Pennsylvania, New York, New England, Florida, and Ohio.

Mr. Ray Wayne, sales manager, and Mr. Arthur Lipski, president and general manager of Oxford International Corp., testified that the business of that firm is the importation of parts, accessories, and sundry items for the bicycle industry. They were familiar with horn-light combinations, such as those here involved, and had sold thousands of them throughout the United States over a 20-year period.

Mr. Salvatore DiGaetano, vice president in charge of sales and purchase of bicycle parts, accessories, and sundry items for F. A. Baker & Co., Inc., stated that the business of his firm is selling bicycles to bicycle dealers, hardware stores, etc. He has been in that line of business for 35 years, has been familiar with the items involved herein for 10 or 15 years, and has sold them extensively around the eastern seaboard of the United States.

Mr. Karl S. Scaison, president and general manager of Progressive Cycle Company, Inc., testified that his firm is a wholesale distributor of bicycles, bicycle parts, bicycle accessories, velocipedes, and juvenile wheel goods. He has sold such merchandise in Washington, D.C., Delaware, Maryland, Pennsylvania, New Jersey, New York, Connecticut, and Massachusetts. He was familiar with the merchandise involved herein and had sold thousands of such items for approximately 7 years.

Defendant called Fred Herbst, president and general manager of Herbst Brothers Motormarine, Inc., since 1956. His firm is engaged in retailing, wholesaling, and distributing motor scooters and Mopeds, and has dealt in practically all varieties of small motorized vehicles.

Dr. Reyersbach testified that the Comet horn-lite here involved contains a horn and a light, both of which are activated by batteries, electricity being necessary to operate the article. It is sold with a clamp which enables it to be fastened on any kind of gooseneck or any kind of vehicle.

Plaintiff's witnesses were in general agreement as to the market to which these horn-lites are sold, the category in which they are regarded by the trade, and their use.

According to these witnesses, horn-light combinations are sold to bicycle jobbers, automotive jobbers, retailers, chain stores, bicycle dealers and distributors, hardware distributors, general merchandise distributors, department stores, and sporting goods stores. None of

the witnesses had sold them to bicycle manufacturers as original equipment. One reason, according to Mr. Wayne, was that they were cumbersome items, did not add to the motif of a modern bicycle, and did not add to the line. Mr. Lipski said they were more in the accessory field than in the original equipment field.

All of the witnesses said a distinction was made in the trade between bicycle parts and bicycle accesories. For instance, Dr. Reyersbach testified:

Bicycle parts are the parts which are needed to operate the bicycle. Bicycle accessories are accessories which make the bicycle more desirable, trim it up and make it suitable for certain uses, like a luggage carrier, you can carry books, or a basket you can put things into, or a horn, which would give a signal, or a bell, which will give a signal, or a Horn Lite which will give a light and a signal.

He regarded the horn-lites represented by exhibit 1 as falling within the category of accessories because a bicycle can be operated without a horn and without a light.

Mr. Wayne testified:

Well, an accessory is just to give the child a play value of a soundmaker or a noise-maker and a light for evening use. On a bicycle a part to the bicycle might be the crank, the chain, and the fender, which has become a permanent part.

Among accessories, he included lights, horns, streamers, saddles, different types of handlebars, and racks. He said a kickstand was a permanent part of a bicycle. He had sold horn-lites as accessories and not as parts.

Mr. Lipski said a basic or standard bicycle consisted of just the essential parts for the proper functioning and use of a bicycle, that is, two wheels, pedals, sprocket, and handlebar set. In his view, lamps, horns, carriers, streamers, tool bags, tops, and other optional equipment were accessories. He regarded horn-lites as accessories and not as parts. He had frequently sold bicycles without lights and had never sold any with horn-lites as original equipment, horn-lites always being sold as accessories for such bicycles.

Mr. DiGaetano included as component parts of bicycles the rim, wheels, tires, tubes, handlebars, extension stems which hold the handlebars, grips, sprockets, roller chains, pedals, saddles, and mudguards. He included among accessories baskets, tourist bags, and kickstands. He sold the items involved herein only as accessories. He explained that the clamp with exhibit 2 indicated to him that the article was an accessory, because the clamps would be attached to the handlebar, whereas a lamp which was original equipment would be placed on the fender.

Mr. Scaison considered the following as accessories: Baskets, streamers, tool bags, touring bags, color coils, lights, horns, horn-lite combinations, generator sets, luggage carriers, and seat covers. In his opinion, the fact that an article might be necessary for the safe operation of a bicycle would have no bearing on whether it was a part or an accessory.

Dr. Reyersbach testified that in his experience horn-light combinations are used as lights and warning signals on bicycles. Mr. Wayne had seen them used in the Middle West as accessory items for bicycles, pedal cars, and motor bicycles. Mr. Lipski had always sold them, as accessories. The bicycles he sold were not used at night; therefore, he said, it would not be necessary to have a light, horn, or horn-lite on them. If bicycles were used at night, he thought a horn or light would be a good safety feature. Mr. DiGaetano testified that horn-lites were made for use on bicycles and that most of them were so used. He had seen them used a couple of times on scooters and once on a golf cart.

Mr. Herbst testified that his firm had dealt in various makes of small motorized vehicles, smaller than compact cars, including motor scooters, motorbikes, golf carts, small industrial wheel motorized vehicles, and sports and golf type vehicles. He had observed motorized golf carts all over the metropolitan area and had rented and serviced them. During the course of his experience he had observed thousands of small wheel motorized vehicles. On several occasions he had observed the use of horn-light combinations on such vehicles whenever it was necessary to install an economical, cheap, temporary expedient for both visual and audio signals. The last application he knew of was on several three-wheeled gasoline golf carts that his firm sold to the World's Fair Corporation. Due to a regulation at the Fair grounds, it was necessary for the operator to be supplied with a horn-lite and fire extinguisher. Therefore, the witness had purchased several horn-light units, but they proved unsatisfactory. He had them removed and installed a heavier duty front light, a rear light, and a battery-operated horn, operating from a battery within the vehicle.

None of the witnesses knew of any law requiring a bicycle to be sold with a horn or a light.

It is plaintiff's contention that these horn-light combinations are not parts of bicycles for the reason that they are regarded by the trade as accessories and not as bicycle parts, have substantial non-bicycle uses, and have not been classified judicially as parts of bicycles.

The evidence presented indicates that the trade makes a distinction between accessories and parts of bicycles and regards items outside the basic or standard bicycle as optional equipment or accessories. While the witnesses did not entirely agree as to which items were

parts and which were accessories, they considered horns, lights, and horn-light combinations as accessories. This is not necessarily decisive of the issue herein since the fact that an article is optional equipment does not preclude its classification as a part, depending on its nature, function, and purpose in relation to the article to which it is attached or is designed to serve. *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758; *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849; *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602.

In *Trans Atlantic Company* v. *United States, supra*, the merchandise consisted of brackets used for mounting hydraulic door closers on a door frame. They were not required when such closers were used on the door itself. They were sold as separate items and were used only for mounting a particular door closer on the door frame. The court held they were parts of door closers. In the course of its opinion, it cited a number of cases, and then stated (p. 33):

In all of these cases, as in the present case, there was an option on the part of the purchaser of the article to use it either with or without the imported auxiliary devices. When the purchaser elected to use the article with such auxiliary devices, the devices were held in each case to be parts of the article for which they were designed and intended for use. In all these cases the articles could have been used without the imported auxiliary device. In these cases the court considered the function of the auxiliary part when the purchaser elected to use it as a part of the article and did not consider it determinative that the article could function without the auxiliary part.

In the present case, the purchaser of the door closer has the option to mount it either on the door frame or on the door. Once he decides to use the closer on the door frame the brackets, as the view finders in the *Zeiss* case or the lamps and horns in the *Bosch* case, become necessary and required to so mount the door closer if it is to be operated efficiently in this position. When so used the brackets are attached to and clearly are "parts" of the door closers.

In *United States* v. *Antonio Pompeo, supra*, the court held that supercharges, once installed in automobiles, became parts thereof. The court said (p. 13):

* * * The problem is not whether or not automobiles are customarily manufactured with supercharges, but rather what is the nature and function of the imported supercharges. At the time of importation these supercharges, as the undisputed evidence clearly shows, are dedicated irrevocably for use upon automobiles. Such being the fact, it is unrealistic to attempt to determine the nature of the superchargers apart from their undisputed ultimate use. * * *

It is clear that the horn-light combination involved herein performs a useful function when attached to a bicycle and contributes to the

safe, proper, and efficient operation thereof, and that a light is necessary to its use at night.

Since the collector classified these articles as parts of bicycles, it is presumed that he found all of the necessary facts required for that classification. *Dorward & Sons Co., Pacific Vegetable Oil Corp. v. United States*, 40 CCPA 159, C.A.D. 512; *F. H. Kaysing v. United States*, 49 CCPA 69, C.A.D. 798. Inherent therein is a specific finding that these horn-lites are dedicated for use upon bicycles in the performance of the functions for which they were designed, thereby becoming bicycle parts within the meaning of paragraph 371, *supra.* Plaintiff has the burden of overcoming that finding. *F. T. Griswold Mfg. Co. v. United States*, 36 Cust. Ct. 27, C.D. 1749.

Plaintiff claims to have sustained its burden by showing substantial non-bicycle uses for these horn-light combinations. We are not in accord that the record is sufficient for that purpose. Plaintiff's witnesses testified that they had sold these articles all over the United States for use on bicycles. Dr. Reyersbach testified that they were used as lights and warning signals on bicycles. Mr. DiGaetano stated they were made for use on bicycles and that most of them were so used. While Mr. Wayne had seen them used on pedal cars and motor bicycles, the record does not show how often or where. Mr. DiGaetano had seen them used a couple of times on scooters and once on a golf cart. Mr. Herbst, who had had extensive experience with small motorized vehicles, had seen horn-light combinations used only as temporary expedients, and once with World's Fair vehicles, where their use was unsatisfactory and they were removed.

We conclude that the record fails to establish any significant alternative uses for these horn-lites and that it fails to overcome the presumption that they are dedicated to use on bicycles which is inherent in the collector's classification.

The classification of bicycle and automobile lamps, bells, or horns has been before the courts on numerous occasions. An examination of the decisions chronologically will show the evolution of that classification.

In 1915, in *Mead Cycle Co. v. United States*, 28 Treas. Dec. 389, T.D. 35223, it was held that cycle lamps, pump clips, pumps, push bells and tool bags, used as accessories to bicycles, were not properly classifiable under paragraph 120 of the Tariff Act of 1913 as bicycles and finished parts thereof, on the ground that only essential parts of a denominated article, not mere accessories thereof, fall properly within a tariff provision for parts.

In *United States v. Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T.D. 41434 (1926), it was held that lamps and horns were dutiable as

parts of automobiles under paragraph 369 of the Tariff Act of 1922. The court pointed out that horns were essential and necessary parts of automobiles and that they could not be operated efficiently or safely without them. It noted that to operate an automobile without lights would limit it to day operations and that the use of a horn was essential to the safety of the operator of the car and to the public in general. The *Mead Cycle Co.* case, *supra*, was distinguished on the ground of the difference in the manner of operating a bicycle and an automobile and the different results growing out of their inefficient operation.

In *S. H. Kress & Co.* v. *United States*, 51 Treas. Dec. 1212, Abstract 2843 (1927), it was held that bicycle push bells were accessories rather than parts of bicycles, and in *F. B. Vandegrift & Co.* v. *United States*, 52 Treas. Dec. 543, Abstract 3673 (1927), it was held that bicycle horns were not dutiable as parts of bicycles. Both of these cases cited *United States* v. *Bosch Magneto Co.*, *supra*, but followed the *Mead Cycle Co.* case, *supra*.

In *L. Oppleman, Inc.* v. *United States*, 27 CCPA 227, C.A.D. 89 (1940), it was held that bicycle bells were dutiable under the provision for bells in paragraph 364 of the Tariff Act of 1930, rather than under the provision for bicycles and parts thereof under paragraph 371. The court stated that at the time of a Presidential proclamation modifying paragraph 364 (1931) the cases held that bicycle bells were not parts of bicycles, citing the *Mead Cycle Co.* case, *supra*. It then examined the legislative history of the Tariff Act of 1930 and quoted from a report of a Senate committee in which it was stated that paragraph 364 was limited in application to metal bells of common commercial usage such as bicycle bells, door bells, and gongs. The court also cited the *Bosch Magneto Co.* case, *supra*, and noted that it had distinguished the *Mead Cycle Co.* case, *supra*.

In *Eric Wedemeyer* v. *United States*, 7 Cust. Ct. 141, C.D. 556 (1941), this court held that bicycle lamps with accompanying electric generators were properly dutiable under paragraph 371 of the Tariff Act of 1930 as parts of bicycles, rather than under paragraph 353 as articles having as an essential feature an electrical element or device. The witness testified that the lamps and the accompanying electric generators were sold as units and were used as illuminating lights for bicycles operating at night; that the electric generator was attached by a special clamp to the front wheel of the bicycle; that the clamp could be attached to any oval shaped object and that the motion of the bicycle made the generator go. The court pointed out that most of the states of the Union have statutes requiring bicycles operated at night to be equipped with lamps. It also found from the record that the

articles involved were exclusively used on bicycles. The court stated that while it had held in the *Mead Cycle Co.* case that cycle lamps were accessories and not parts of bicycles, it was now of opinion that lamps were parts of bicycles. It said that at the time of the decision in the *Mead Cycle Co.* case it may have been that the states had not enacted statutes requiring bicycles to be equipped with bicycle lamps. It concluded that the existence of such statutes indicated that the safe, proper, and efficient operation of bicycles at night required the illumination furnished by bicycle lamps such as those then before the court.

In *Spiegel Bros. Corp.* v. *United States*, 9 Cust. Ct. 194, C.D. 692 (1942), it was held that bicycle horns used exclusively on bicycles as warning signals were properly dutiable as parts of bicycles. The merchandise was described as a large two-tone horn (both tubes blowing). The witness said the articles were sold as bicycle horns and that they were attached to a standard size bicycle handlebar by brackets or clamps. The court noted that the record established that the articles were sold as bicycle horns, were used exclusively on bicycles as warning signal devices, were designed specially for attachment to the handlebars of bicycles, and were necessary to insure the safe, proper, and efficient operation of a bicycle. The court quoted extensively from the *Wedemeyer* case, *supra*, and also noted that there was a New York statute requiring that bicycles be provided with a suitable and adequate horn, bell, or other device.

*New York Merchandise Co., Inc.* v. *United States*, 22 Cust. Ct. 313, Abstract 53146 (1949), involved metal horns with rubber bulbs attached. The court found that they were not exclusively used on bicycles but were also used on toy automobiles, velocipedes, and "sidewalk bikes", and held that they were not dutiable under paragraph 371 as parts of bicycles.

In *G. Joannou Cycle Co., Inc.* v. *United States*, 46 Cust. Ct. 172, C.D. 2253 (1961), the merchandise consisted of cycle horns which were used on bicycles, motorcycles, tricycles, motor scooters, and toy automobiles. The importer testified that in creating the design of the horns he had contemplated various uses to which they could be adapted and for which they were actually used. The court noted that the brackets, together with the screws, were physical evidence of the adaptability of the horns for adjustment to different sized handlebars of bicycles and similar vehicles. It held that the diversity of use of the articles precluded their classification as parts of bicycles.

The issue in *United States (Korlis Ltd., Party in Interest)* v. *The Westfield Manufacturing Company*, 49 CCPA 96, C.A.D. 803 (1962), was whether certain items were accessories within the meaning of a modification of paragraph 371 of the Tariff Act of 1930 which assessed

a particular rate of duty on bicycles "If weighing less than 36 pounds complete without accessories". The court held that kickstands, with which nearly all bicycles were sold in this country, were parts of bicycles, pointing out that they were necessary as a form of parking device. It also held that lamps and generators were parts of bicycles, stating:

Although the record reflects that the lamps and generators are not in great demand, they do provide the rider of a bicycle in darkness with a safety device which is not otherwise available. The use of the bicycle in the dark without some form of illumination would be dangerous and, in most states, illegal. Therefore, without an illuminating device, the bicycle is limited to daytime use. Of course, if the owner wanted only to ride the bicycle during bright daylight, illumination would be unnecessary, but if he does wish to ride at night or during a dark foggy day, he cannot do so without illumination. This situation is much like that in the *Trans Atlantic* case. There, the door brackets were unnecessary if the door closers were to be installed in one position but if they were to be installed in another, the brackets were necessary. In other words, we held the brackets to be "parts" because without them the mounting of the door closers would be limited to one position.

The party in interest argues, as we previously noted, that since children between five and fourteen years of age are the chief users of bicycles in this country and they are not permitted to ride them after dark, the imported lamps are unnecessary equipment and therefore accessories. We do not agree with this contention. The significant factor is that these lamps and generators are capable of providing the necessary illumination for night bicycle riders and without illumination the bicycle cannot be ridden. Our conclusion in the *Trans Atlantic* case was not based upon how widely the imported brackets were used but upon the utility of the brackets when used.

We believe these lamps and generators provide the rider with limitless use of his bicycle as a bicycle insofar as day and night usage is concerned and, therefore, must be considered "parts" of a bicycle.

In *Sherwin International, Inc.* v. *United States*, 54 Cust. Ct. 466, Abstract 69382 (1965), it was held that so-called "Happy Horns" which were used on tricycles, velocipedes, toy automobiles, and sidewalk type or play cycles, were not dedicated to use as parts of bicycles and were not classifiable as such.

In *Oxford Int'l Corp.* v. *United States*, 55 Cust. Ct. 472, Abstract 69607 (1965), the merchandise consisted of sirens which were original equipment on tricycles, scooters, wagons, and toy automobiles. The court held that, since the uncontroverted evidence disclosed that due to the impracticability of the imported sirens as warning devices on bicycles, the fact that the clamp was not adapted to such use, and the fact that the sirens were used on the handlebars of tricycles, scooters, wagons, and pedal automobiles, they did not fall within the provision for parts of bicycles in paragraph 371.

In *S. Hiller & Co. et al.* v. *United States*, 59 Cust. Ct. 79, C.D. 3082 (1967), it was held that cycle horns which had a diversity of use and were not chiefly used on bicycles were not dutiable as parts of bicycles.

From these cases we conclude that horns and lights are presently considered necessary to the safe, proper, and efficient operation of bicycles and that where the particular horns or lights involved are dedicated to use with bicycles, they are dutiable under paragraph 371 as parts of bicycles.

Since the record fails to overcome the presumption attaching to the collector's classification that these horn-light combinations are dedicated to use with bicycles, we hold that they were properly assessed with duty by the collector under paragraph 371 of the Tariff Act of 1930, as modified, as parts of bicycles. The protests are overruled and judgment will be entered for the defendant.