(C.D. 3635)

VICTORIA DISTRIBUTORS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 9, 1968)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Charles P. Deem* and *Bernard J. Babb*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The merchandise covered by the protests presently before the court, which have been severed from the protests originally consolidated for trial, consists of "Vindec" generators or "Vindec" generator sets imported from Japan and entered at the port of Philadelphia. The merchandise was assessed with duty at 30 per centum ad valorem under paragraph 371 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as parts of bicycles. While various claims were made in the protests, the ones now relied upon are that the merchandise is properly dutiable under paragraph 353 of said tariff act, as modified by said General Agreement on Tariffs and Trade, at 15 per centum ad valorem, as articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, or under said paragraph, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, or by Presidential Proclamation No. 3468, 97 Treas. Dec. 157, T.D. 55615, and Presidential Proclamation No. 3479, 97 Treas. Dec. 430, T.D. 55649, as articles having as an essential feature an electrical element or device, at 13¾ per centum ad valorem or 12½ per centum ad valorem, depending on the respective dates of entry.

The pertinent provisions of said tariff act, as modified, are as follows:

Paragraph 371 of the Tariff Act of 1930, as modified by T.D. 51802:

Parts of bicycles, not including tires:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Other _____ 30% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 51802:

Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy * * *:

\* \* \* \* \* \* \*

Other articles (except machines for determining the strength of materials or articles in tension, compression, torsion, or shear; flashlights; batteries; vacuum cleaners; and internal-combustion engines) _____ 15% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \* \*

Other ( * * * )_____ 13¾% ad val.

This rate was reduced to 12½ per centum ad valorem by T.D. 55615 and T.D. 55649.

It has been stipulated that the merchandise involved herein is in chief value of metal.

Plaintiff called four witnesses, who had had the following trade experience:

Dr. Ernst Reyersbach, president and general manager of Victoria Distributors, Inc., the plaintiff herein, and a partner of the predecessor company, testified that these firms have been engaged in the importation of bicycles, bicycle parts, and accessories, and that he has been engaged in that line of business since 1933. He was familiar with the generator sets involved herein and how they operated.

Mr. Ray Wayne, sales manager of Oxford International Corp., testified that he had been selling bicycle accessories all over the United States for 22 years, and that he was familiar with the generator sets involved herein and has sold them in the Middle West for about 7 years.

Mr. Arthur Lipski, president and general manager of Oxford International Corp., testified that his company is engaged in the importation and sale of bicycle parts, accessories, and sundry parts and that he has sold such items throughout the United States for over 20 years. His firm had sold thousands of generator sets all over the United States for about 10 years.

Mr. Salvatore DiGaetano, vice president in charge of sales, and general manager of F. A. Baker Company, Inc., stated that the business of that company was the wholesale distribution of bicycle parts,

accessories, and sundry items. He has been in that line of business for 35 years and has sold thousands of generator sets from Maine to Virginia.

Defendant called Mr. Frederick Herbst, president and general manager of Herbst Brothers Motormarine, Inc., since 1956. His firm is engaged in retailing, wholesaling, and distributing motor scooters and Mopeds, and has dealt in practically all varieties of small motorized vehicles.

At the trial there was received in evidence as exhibit 1 a sample of the merchandise described on the invoice as " 'VINDEC' Generator Sets Single Bulb type, with S type Bracket, 6v–3w". It consists of a dynamo, a headlight, a taillight, and two cables. According to Dr. Reyersbach, the merchandise described as " 'VINDEC' Generators with S type Bracket 6v–3w, Double Bulb type" differs only in that it has two bulbs instead of one and has a switch to operate either the lower beam or the upper beam.

Dr. Reyersbach described how these items operate as follows:

There is a dynamo which is tilted against the wheel, and through the motion of the wheel creates the electricity which is guided through a lead wire into the headlight and into the taillight. If it is a one-bulb light there is a direct connection to the one bulb and it lights up as soon as the bike is in motion. If it is a two-bulb there is a switch on the top of the light which will either turn on—it's an on and off switch and it will turn on either the lower beam or the upper beam. There is also a wire going from the generator to the taillight, which is directly connected.

According to the witness when the generator is turned to the "on" position, it lights both the headlight and the taillight. In the two-bulb arrangement, one of the bulbs is lighted at a time. When the dynamo is against the front wheel or the rear wheel of a bicycle, and the bicycle is ridden, electricity is produced which turns on the lights. The lights go out when the rider stops turning the generator.

The record indicates that these generating sets are sold to bicycle dealers, bicycle accessory dealers, jobbers and stores, mail-order houses, chain stores, hardware distributors and stores, and sporting goods stores. They are not sold as original equipment to bicycle manufacturers.

Dr. Reyersbach testified that the trade draws a distinction between bicycle parts and bicycle accessories. The components essential to move a bicycle are parts, he said, but the ornamental items are accessories. He regarded the following as parts: Cranks, pedals, handles, handlebars, chains, coaster brakes, tires, tubes, and spokes. Accessories include baskets or carriers, bells, horns, lights, speedometers, flags, perhaps chain guards, fox tails, streamers. He included generator sets

among accessories on the ground that they are not needed to operate a bicycle.

Plaintiff's other witnesses were in agreement as to the trade distinction between parts and accessories. Mr. Wayne named as parts cranks, spokes, wheels, rims, rear hubs, and front hubs. He considered as accessories lights, horns, generator sets, baskets, streamers, high-riser bars. He regarded generator sets as optional equipment because a light is not required if a bicycle or a motor scooter is not used at night.

Mr. Lipski considered as accessories, optional equipment, such as generator sets, streamers, baskets, lights, seat covers, tool boxes, pumps, and any items not essential to the riding of the bicycle. He said that the essential components of a basic or standard bicycle are wheels, spokes, brakes, chains, handlebars, seats—that is, those parts which are necessary for riding a bicycle. He definitely regarded the articles before the court as accessories. While he thought that a light would be a safety feature if one were riding a bicycle at night, he said that most bicycles are not used at night.

Mr. DiGaetano said the component parts of a standard bicycle are the frame, wheels, tires, tubes, handlebars, saddles, seat posts, pedals, fenders. Accessories are anything that can be added, such as baskets, horns, lamps, seat covers, streamers, pedal blocks, handlebar struts, carriers. Such accessories are optional equipment.

It is clear from the record that the trade makes a distinction between accessories and parts of bicycles and regards items outside the basic or standard bicycle as optional equipment or accessories. However, as we have pointed out in *Victoria Distributors, Inc.* v. *United States*, 61 Cust. Ct. 364, C.D. 3634 (protest 63/18656), that is not necessarily decisive of the issue since the fact that an article is optional equipment does not preclude its classification as a part, depending on its nature, function, and purpose in relation to the article to which it is attached or is designed to serve. *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758; *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849; *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602.

In *Victoria Distributors, Inc.* v. *United States*, *supra*, to which reference has been made, we examined the judicial decisions involving bicycle and automobile lamps, bells, and horns, and concluded that horns and lights are presently considered necessary to the safe, proper, and efficient operation of bicycles and that where the particular horns or lights involved are dedicated to use with bicycles, they are dutiable under paragraph 371, as parts of bicycles.

The merchandise in *Eric Wedemeyer* v. *United States*, 7 Cust. Ct. 141, C.D. 556, consisted of lamps with accompanying electric gener-

ators. The witness testified that they were sold as units and were used as illuminating lights for bicycles operated at night; that they were attached by a special clamp to the front wheel of the bicycle, and that the clamp could be attached to any oval shaped object. They were held dutiable as parts of bicycles.

In *United States (Korlis Ltd., Party in Interest)* v. *The Westfield Manufacturing Company*, 49 CCPA 96, C.A.D. 803, the issue was whether certain items were accessories within the meaning of a modification of paragraph 371 of the Tariff Act of 1930 which assessed a particular rate of duty on bicycles "If weighing less than 36 pounds complete without accessories". The court held that lamps and generators, among other things, were parts of bicycles. The court stated (p. 100):

Although the record reflects that the lamps and generators are not in great demand, they do provide the rider of a bicycle in darkness with a safety device which is not otherwise available. The use of the bicycle in the dark without some form of illumination would be dangerous and, in most states, illegal. Therefore, without an illuminating device, the bicycle is limited to daytime use. Of course, if the owner wanted to only ride the bicycle during bright daylight, illumination would be unnecessary but if he does wish to ride at night or during a dark foggy day, he cannot do so without illumination. The situation is much like that in the *Trans Atlantic* case.There, the door brackets were unnecessary if the door closers were to be installed in one position but if they were to be installed in another, the brackets were necessary. In other words, we held the brackets to be "parts" because without them the mounting of the door closers would be limited to one position.

The party in interest argues, as we previously noted, that since children between five and fourteen years of age are the chief users of bicycles in this country and they are not permitted to ride them after dark, the imported lamps are unnecessary equipment and therefore accessories. We do not agree with this contention. The significant factor is that these lamps and generators are capable of providing the necessary illumination for night bicycle riders and without illumination the bicycle cannot be ridden. Our conclusion in the *Trans Atlantic* case was not based upon how widely the imported brackets were used but upon the utility of the brackets when used.

We believe these lamps and generators provide the rider with limitless use of his bicycle as a bicycle insofar as day and night usage is concerned and, therefore, must be considered "parts" of a bicycle.

A sample of the lamp and generator set in that case is still in the custody of the court. We have compared it with exhibit 1 herein and find that it is very similar, differing primarily in being a little larger.

It thus appears that the within merchandise is of the same type as has previously been held to be parts of bicycles for tariff purposes. The remaining issue is whether plaintiff has established that the particular articles before the court are not dedicated to use with bicycles.

Since the collector classified these articles as parts of bicycles, it is presumed that he found all of the necessary facts required for that classification. *Dorward & Sons Co., Pacific Vegetable Oil Corp.* v. *United States*, 40 CCPA 159, C.A.D. 512; *F. H. Kaysing* v. *United States*, 49 CCPA 69, C.A.D. 798. Inherent therein is a specific finding that these generator sets are dedicated for use upon bicycles in the performance of the functions for which they were designed, thereby becoming bicycle parts within the meaning of paragraph 371, *supra*. Plaintiff has the burden of overcoming that finding. *F. T. Griswold Mfg. Co.* v. *United States*, 36 Cust. Ct. 27, C.D. 1749.

Plaintiff claims to have sustained its burden by showing substantial non-bicycle uses for these generator sets. The evidence on this point may be summarized as follows:

Dr. Reyersbach testified that these generator sets are designed for bicycles and are used as accessories on bicycles and motorbikes, on special types of bicycle equipment with an auxiliary motor like the Hyster bike, and on small motor scooters. The witness explained that the Hyster motor bike has pedals which have to be used to start the vehicle and to go up a hill. He testified that the main use of these generating sets had been on Whizzer motorbikes when they had been very much in use in this country. The Whizzer was basically a bicycle which had a motor built into it. Subsequently, an article called a motor-ped was built. It was better adapted to the motor than a standard bicycle; it had different brakes. These generating sets were used on motorbikes for a time. Later generator sets which were driven by the flywheel of the motor were used.

The witness testified that when used on motor scooters, modifications of the generator lighting sets are necessary. He explained that motor scooters have much smaller wheels and are not really bicycles. They have scooter forks which are different from bicycle forks. If the fork of the motor scooter is too wide, a piece is welded onto the motor scooter or a special bracket is made to hold the generator.

Mr. Wayne testified that he had seen generator sets such as those here involved used on bicycles, golf carts, Whizzer motor bicycles, motorcycles, and small inexpensive motor scooters, in the Middle West, that is, Chicago, Minnesota, Wisconsin, and Michigan. The golf carts he referred to were three-wheel units with a seat and saddle to carry the bag and clubs and hold a person. Late at night, he said, a generator type light is used on the front wheel. He had also seen such lights used on the article illustrated in exhibit 4 (a Discoverer motor scooter) at McCormick Hall and Orr Amphitheater in Chicago, for transportation at shows and conventions. He had seen generator sets used on the Discoverer side car scooter. However, he could not determine

whether the generator set in exhibit 4 was similar to the importation herein.

According to the witness, generator sets are not built for a particular bicycle and are designed for use on golf carts as well. The fact that golf carts have different sized tires makes no difference, as the cord could be cut or wound around the tubing. However, he could not identify one generator lighting set by name, serial number, or manufacturer that he had seen used any place except on bicycles. He had no idea of the percentage of these devices which he had seen on bicycles as compared with those on other articles.

Mr. Lipski testified that generating sets are used extensively as bicycle accessories and on motorbikes and motor scooters. He had sold thousands of them to the motorbike trade. He had seen them used in the Chicago area, in the Middle West, and in California on motor bicycles, scooters, and motorcycles. His firm had sold generator sets to the Columbus Cycle Company, the manufacturer of the Discoverer motor scooter depicted in exhibit 4. He had seen generator lighting sets used with that type of equipment. He said that the same company used generator sets on golf carts and industrial carts. He had also seen such sets used on Lambretta and Vespa motorcycles but his biggest sales were to users of Wizard motor bicycles and Monarch super trim bicycles. The latter have pedals which are used to start them until the motor turns over. The witness called them bicycle type motorbikes. No modifications were necessary to attach generator lighting sets to them. The witness did not know whether modifications were necessary for the use of generators on motor scooters.

He said that 90 percent of the generator sets he had seen were on bicycles and 10 percent on other vehicles.

Mr. DiGaetano testified that he had sold thousands of generating sets but he had never seen them used on vehicles other than bicycles and motorbikes. The latter had pedals with which they could be propelled and which were primarily used for the purpose of starting the vehicle. The witness had not seen generator sets on bicycles built like Lambrettas nor on motor scooters.

Mr. Herbst testified that he had had an interest in dealing in small motorized vehicles since 1955. At the present time his firm is a retailer, wholesaler, and distributor of motor scooters and Mopeds. It also deals in motorbikes, golf carts, industrial wheel motorized vehicles, and is or has been a distributor for various makes of such vehicles for industrial and sports use. Among the brands which the witness had serviced, sold, or was familiar with are Lambretta, Cushman, Lombard, Motobecane, West Coaster, Honda, Yamaha, Vespa, Ducati, Triumph, Simplex, All State, Victor, Ez-Go, Marketeer, Caddy-Cart. In addition, his firm has rented golf carts to 11 different

country clubs in the New York Metropolitan area since 1960. In the course of his experience he has observed thousands of small motorized wheel vehicles. During all that time he had never seen a wheel driven generator lighting set, such as, or similar to, the items involved herein on any such vehicles.

It appears from this evidence that the use of these generator sets other than on standard bicycles is primarily on motorbikes. According to the record, a motorbike is essentially a bicycle with a small auxiliary motor. Pedals are necessary to start the vehicle or to push it up hills.

The following definitions are pertinent:

The Reader's Digest Great Encyclopedic Dictionary (1966):

motorbike *n. Informal.* 1. A bicycle driven by a small motor. 2. A motorcycle.

bicycle *n.* A vehicle consisting of a metal frame mounted on two large wheels, one in back of the other, having a saddle for the rider, handlebars for steering, and pedals or a small motor by which it is propelled.

Webster's New International Dictionary, 1934 and 1957 editions:

motor bicycle. a. A motorcycle. b. A light motorcycle resembling a bicycle in design and structure.

The motorbikes referred to by the witnesses in this case are bicycles with small auxiliary motors, but still bicycles rather than motorcycles. Thus the usage of these generator sets on such vehicles would not preclude their classification as parts of bicycles.

The only witness who gave any figures comparing bicycle and non-bicycle usage was Mr. Lipski, who said that 90 percent were used on bicycles and 10 percent on small motorized vehicles. Presumably the latter included motorbikes since he stated that the Monarch super twin vehicle was a gasoline motor driven vehicle and it appears from his other testimony that the Monarch was a motorbike. He also testified that his biggest sales were to users of Wizard motor bicycles and Monarch super twin bicycles. In sum, Mr. Lipski's testimony does not establish that he had seen any substantial percentage of these generator sets used on vehicles other than bicycles or motorbikes of the type which are essentially bicycles. In accord is the statement of Mr. DiGaetano that he had seen such sets used only on bicycles and motorbikes. It is clear that these articles were designed for use on standard bicycles and on the Whizzer, Wizard, and Monarch motorbikes. When used on motor scooters or golf carts, modifications were necessary. Furthermore, the employment of these generator sets to any extent on golf carts is doubtful since golf is not played at night. In fact, the use of generator sets of the type before the court on any motor-powered

vehicle except motorbikes (which must to some extent be propelled by pedals) seems highly unlikely. In support of this view we have the testimony of Mr. Herbst, whose experience had been extensive in the sale, repair, service, and running of many types of small motorized vehicles, including motor scooters and golf carts, such as those claimed by some of plaintiff's witnesses to have utilized generator sets to provide illumination. He stated that in his experience he had never seen generator sets of the type here involved used on such vehicles. His testimony is in accord with the view that it is highly unlikely that wheel driven generator sets, i.e., those which depend on the turning of a wheel to provide illumination, would be commercially and substantially used on vehicles which have their own motor or motive power and hence a source of power for producing illumination.

We conclude that the record fails to establish that in their imported condition these generator sets have any significant commercial use on other than bicycles and motorbikes. We also conclude that the record fails to overcome the presumption that such articles are dedicated to use on bicycles which is inherent in the collector's classification.

We hold, therefore, that the generator sets involved herein were properly classified by the collector under paragraph 371 of the Tariff Act of 1930, as modified, as parts of bicycles. The protests are overruled and judgment will be entered for the defendant.